# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SHANNON HANNON, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                         **NO. 17-304-JWD-EWD**

**F. MILLER PROPERTIES, LLC**


      Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Signed in Baton Rouge, Louisiana, on July 12, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

SHANNON HANNON, ET AL.                    CIVIL ACTION

VERSUS                                                    NO. 17-304-JWD-EWD

F. MILLER PROPERTIES, LLC

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is a Motion for Leave to File Amended Complaint (the "Motion for Leave") filed by Plaintiffs Shannon Hannon, Melissa Torres, and Shelly Guidry, (collectively, "Plaintiffs").[1] The Plaintiffs seek leave to add additional theories of recovery against two new Defendants. The motion is opposed.[2] On February 16, 2018, the motion was referred to the undersigned.[3] For the reasons set forth herein, the undersigned recommends that the Motion for Leave be **GRANTED IN PART.** Specifically, it is **RECOMMENDED** that the Motion for Leave be **DENIED** to the extent it seeks to add Frank W. Miller as a Defendant in this case. It is **RECOMMENDED** that the Motion for Leave be **GRANTED** to the extent it seeks to add Waffle House Inc. as a Defendant in this case.

---

[1] R. Doc. 20.

[2] R. Doc. 28.

[3] "Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)." *Cazares v. Morris*, Civ. A. No. CV-09-2168-PHX-ROS (LOA), 2011 WL 2414543, at *2 (D. Ariz. June 16, 2011) (citations omitted). However, the law is not settled regarding whether a motion to amend involving a futile amendment is a case dispositive motion under 28 U.S.C. § 636. *Compare Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) (holding that because the magistrate judge's denial of the plaintiff's motion to amend his complaint merely prevented him from adding a defendant, the motion to amend was a non-dispositive matter) *with HCC, Inc. v. R H & M Mach. Co.*, 39 F. Supp. 2d 317, 321 (S.D.N.Y. 1999) (holding that the denial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility of the proposed amendment). Accordingly, the undersigned is issuing a recommendation on the motion rather than an order.

## I.    Facts

The parties appear to agree on the following facts. Miller Properties, Inc. ("Miller Properties") owned and/or operated a number of Waffle House restaurants in Louisiana.[4] Plaintiffs worked at some of those restaurants as servers and held the job title of "salesperson."[5]

Frank W. Miller ("Frank") was the president, principal and owner of Miller Properties.[6] However, on August 31, 2012, Frank transferred his interest in Miller Properties to his son, Frank G. "Bo" Miller, II ("Bo"), who died in early 2017.[7] In August 2016, Waffle House, Inc. ("Waffle House"), the franchisor, took over the management and operation of the restaurants pursuant to an Interim Operating Agreement.[8] In December 2016, Miller Properties merged into defendant F. Miller Properties, LLC ("FMP"), leaving FMP as the surviving entity of the merger.[9] At least until the December 2016 merger, Miller Properties employed Plaintiffs.[10]

## II.    Procedural History

On May 10, 2017, Plaintiffs filed their Complaint in this Court alleging that FMP, as the alleged successor employer to Miller Properties or alleged current owner of the restaurants, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., by failing to pay Plaintiffs the statutory minimum wage of $7.25 per hour.[11] Specifically, Plaintiffs claim that FMP's practice of deducting $3.10 from the servers' wages per work shift as a "meal credit" was

---

[4] R. Doc. 1 at ¶ 1.4, R. Doc. 28, p. 2.
[5] R. Doc. 1 at ¶¶ 1.4, 1.11, R. Doc. 6 at ¶¶ 1.4 and 1.11, R. Doc. 7, p. 1, R. Doc. 8, p. 1, R. Doc. 9, p. 1.
[6] R. Doc. 20-3, ¶ 4.4, R. Doc. 28, p. 2.
[7] R. Doc. 20-3 at ¶ 4.4, ¶ 6.6, R. Doc. 28, p. 2 and n. 2.
[8] R. Doc. 20-3 at ¶¶ 6.7, R. Doc. 28, p. 2, and R. Doc. 31-2.
[9] R. Doc. 1 at ¶ 1.3, R. Doc. 6 at ¶ 1.7 (answer), R. Doc. 28, p. 1 (opposition).
[10] R. Doc. 1 at ¶¶ 1.2, 1.4, R. Doc. 6, ¶¶ 1.2, 1.10. In their initial pleadings, the parties dispute who owned and operated the restaurants after the merger and who employed Plaintiffs during part of the period of time encompassing their claims (defined below as the "Relevant Period"). Plaintiffs contend that after the merger, either FMP owned and/or operated the restaurants, or that FMP and Waffle House jointly owned and/or operated the restaurants. R. Doc. R. Doc. 1, ¶¶ 1.5, 1.6. FMP contends that it never owned or operated any Waffle House restaurants, including the restaurants at which Plaintiffs worked. R. Doc. 28, p. 1.
[11] R. Doc. 1, pp. 2-4.

improper because the actual cost of the meals provided to Plaintiffs was substantially less than the meal credit.[12]   Plaintiffs further claim that FMP violated the FLSA's notice provisions in the Waffle House Salesperson Manual because the Manual contained the erroneous instruction that servers had to earn tips in order to make up any differences between their cash wages and $7.25.[13] As a result of these claims, Plaintiffs allege that FMP is not entitled to take any tip credit against its minimum wage obligations, the time limitation for filing claims is tolled, and FMP is equitably estopped from asserting time limitations as a defense to Plaintiffs' claims.[14]   Finally, Plaintiffs allege that servers spent more than 20% of their work time in non-tipped duties such as bussing tables and washing dishes, which also prevents FMP from taking any tip credit against its minimum wage obligations.[15] In connection with the foregoing claims, Plaintiffs seek injunctive relief, unpaid wages, liquidated damages in an equal amount to the wages, costs, expenses, interest and attorney's fees.[16]   They also seek provisional certification of an FLSA collective action pursuant to 29 U.S.C. § 216(b) to assert unpaid wage claims on behalf of all similarly situated servers.

Importantly, the period for which Plaintiffs claim unpaid wages (hereinafter, the "Relevant Period"), is January 1, 2014 to May 10, 2017.[17]   Defendant FMP contends that the earliest that the Relevant Period could begin pursuant to the FLSA is May 10, 2014, but agrees that the Relevant Period ends on May 10, 2017 (the date Plaintiffs filed suit).[18]

---

[12] R. Doc. 1, p. 3.
[13] R. Doc. 1, p. 4.
[14] *Id*.
[15] R. Doc. 1, pp. 4-5.
[16] R. Doc. 1, pp. 5-6.
[17] R. Doc. 20-3, ¶¶ 1.1, 1.11.
[18] R. Doc. 28, p. 6.

On June 27, 2017, FMP filed its answer.[19]  On February 15, 2018, Plaintiffs filed their Ex Parte Motion for Provisional Class Certification[20] and the instant Motion for Leave to amend the complaint pursuant to the Limited Scheduling Order deadline.[21]  The Motion for Leave seeks leave under Fed. R. Civ. P. 15 to add claims against two additional potential Defendants, Frank and Waffle House.[22]  Plaintiffs allege Frank and Waffle House were each a "joint employer" of Plaintiffs along with Miller Properties, and also were part of a "single business enterprise" with Miller Properties.[23]  Plaintiffs also assert that Waffle House was a "successor employer" of Miller Properties.[24]  On March 8, 2018, defendant FMP filed its opposition to the Motion for Leave to the extent Plaintiffs seek to add Frank as a defendant.[25]  Plaintiffs' reply and attached exhibits ("Reply") were filed on April 4, 2018.[26]

## III.    Law and Analysis

### A.    Rule 15 and Rule 12(b)(6) Legal Standards

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires."[27]  The Federal Rules permit liberal amendment of pleadings, and Rule 15(a) favors granting leave to amend.  However, "leave to amend is by no means automatic" and the "decision lies within the sound discretion of the district court."[28] A court should consider five factors to determine whether to grant a party leave to amend a complaint: (1)

---

[19] R. Doc. 6.
[20] The Court suspended briefing on the Motion for Provisional Class Certification pending a ruling on the instant Motion for Leave.  *See* Order at R. Doc. 27.
[21] *See* the Court's Limited Scheduling Order at R. Doc. 19.  Additionally, on February 20, 2018, Plaintiffs were ordered to file a motion to substitute the proposed First Supplemental and Amending Complaint with a comprehensive proposed pleading.  *See* R. Doc. 23.  Plaintiffs filed their motion to substitute, which was granted on February 26, 2018.  R. Doc. 25.
[22] R. Doc. 20.
[23] R. Doc. 20-3, Count IV at pp. 6-9, and Count VI at pp. 10-12.
[24] R. Doc. 20-3, Count V at pp. 9-10.
[25] R. Doc. 28.
[26] R. Doc. 31.
[27] Fed. R. Civ. P. 15(a).
[28] *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (citations omitted).

undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[29] Absent any of these factors, the leave sought should be freely given.[30]

Regarding the fifth factor, an amendment is "futile" if it would fail to survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.[31] To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[32] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[33]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[34] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[35] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[36] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[37] In deciding a Rule 12(b)(6) motion to dismiss, the court may consider "the complaint, its proper attachments,

---

[29] *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th Cir. 2004) (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962)).

[30] *Smith*, 393 F.3d at 595.

[31] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007).

[33] *Twombly*, 550 U.S. at 570.

[34] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed. 2d 517 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322–323, 127 S.Ct. 2499, 168 L.Ed. 2d 179 (2007).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009).

[36] *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009).

[37] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) *citing Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.E. 2d. 798 (2007) (other citations omitted).

'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[38]

B.  The FLSA and "Employers"

The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage.[39]  In order "[t]o be bound by the requirements of the [FLSA], one must be an 'employer.'"[40] Pursuant to the FLSA, the term employer "includes any person acting directly or indirectly in the interest of an employer in relation to the employee."[41] The Supreme Court has determined that the FLSA's definition of "employer" is to be interpreted expansively.[42] Thus, "[t]he term employer includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work.'"[43]

The FLSA's definition of "employer" contemplates the possibility of multiple employers.[44] A single individual may be the employee of two or more employers at the same time. The Department of Labor regulations state that a joint employment relationship exists when there is an arrangement between employers to share an employee's services; one employer is acting directly or indirectly in the interest of the other employer or employers in relation to the employee; and where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly,

---

[38] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[39] 29 U.S.C. § 206.

[40] *Kidwell v. Digital Intelligence Systems, LLC*, 2014 WL 4722706, at *2 (N.D. Tex. Sept. 22, 2014) (*citing Donovan v. Grim Hotel Co*., 747 F.2d 966, 971 (5th Cir. 1984)); *see also* 29 U.S.C. §§ 206-207.

[41] 29 U.S.C. § 203(d).

[42] *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed. 2d 406 (1973).

[43] *Lee v. Coahoma Cnty. Miss*., 937 F.2d 220, 226 (5th Cir. 1991) (subsequent history omitted), *quoting Falk*, 414 U.S. at 195.

[44] *Itzep v. Target Corp.,* 543 F. Supp. 2d 646, 652 (W.D. Tex. 2008).

by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.[45]

Furthermore, to determine whether an individual or entity is an employer for purposes of FLSA liability, the Fifth Circuit uses the "economic reality" test.[46] In applying this test, courts consider whether the alleged employer: (1) "possessed the power to hire and fire the employees"; (2) "supervised and controlled employee work schedules or conditions of employment"; (3) "determined the rate and method of payment"; and (4) "maintained employment records."[47] "In cases where there may be more than one employer, [the] court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test."[48] Accordingly, to state a claim under the FLSA, a plaintiff must allege facts sufficient to show satisfaction of the economic realities test for each person and entity it seeks to hold liable under the FLSA.

C. Plaintiffs' Claims Against Frank Are Futile

1. Frank Was Not a Joint Employer with Miller Properties During the Relevant Period

*Plaintiffs' Arguments*

Plaintiffs argue that "[t]hrough discovery, Plaintiff learned facts that suggest [Miller Properties'] former owner and chief executive officer, FRANK W. MILLER, and Miller's franchisor, WAFFLE HOUSE, INC may be solidarily liable for the subject FLSA violations as joint employers…."[49] Plaintiffs then incorporate these "facts" as they relate to Frank by reference to their proposed Supplemental and Amending Complaint:[50]

---

[45] 29 C.F.R. § 791.2(b).
[46] *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citations omitted).
[47] *Id.* at 355.
[48] *Id.* (internal quotations omitted).
[49] R. Doc. 20-2, p. 2. Plaintiffs' memorandum in support asserts very little argument and no legal authority; rather, it merely incorporates the allegations in Plaintiffs' proposed Supplemental and Amending Complaint.
[50] R. Doc. 20-3, ¶¶ 4.1-4.15.

1.    The FLSA violations of which Plaintiffs complain began prior to 2012 and are continuing to the present.[51]

2.    On or about December 29, 1988, Frank and Waffle House executed a Franchise Policy Agreement which governed management and operation of the Miller restaurants, pursuant to subsequently issued Waffle House franchise agreements for individual restaurant locations.[52]

3.    From 1989 to 2012, Frank, franchise principal, owner, and chief executive offer of Miller Properties, personally exerted actual operational control over the restaurants' pay practices, including adoption and implementation of the meal credit and tip credit policies that resulted in the FLSA violations in this case.[53]

4.    From 1989 through at least August 2012, Frank, Miller Properties, and Waffle House acted directly or indirectly in each other's interest in relation to the wages, working conditions and terms and conditions of employment of Miller restaurant employees and shared control over the employees.[54]

5.    Alternatively, from 1989 through at least August 2012, Frank, Miller Properties and Waffle House jointly shared the power to control or supervise Miller restaurant workers, and to determine and/or modify the terms or conditions of their employment, including the complained-of meal credit and tip credit practices that remain in effect to the present day.[55] They also shared responsibility over employment functions such as handling payroll, providing workers' compensation insurance, paying payroll taxes and maintaining personnel and pay records.

6.    On June 3, 2004, Frank, Miller Properties, and Waffle House entered into an Accounting Services Agreement,[56] by which Miller Properties and Frank, individually, authorized Waffle House to handle payroll functions for Miller Property employees, which included the authority and responsibility for taking meal credit and tip credit deductions from wages.[57]

7.    The Accounting Services Agreement executed by Frank remained in effect while Plaintiffs were employed by Miller Properties and the complained-of violations occurred.[58]

---

[51] R. Doc. 20-3, ¶ 4.2.
[52] R. Doc. 20-3, ¶ 4.3.  The referenced franchise policy agreements are not in the record.
[53] R. Doc. 20-3, ¶ 4.4.
[54] R. Doc. 20-3, ¶¶ 4.5-4.6.
[55] R. Doc. 20-3, ¶¶ 4.9-4.10.
[56] R. Doc. 31-1.
[57] R. Doc. 20-3, ¶ 4.11.
[58] R. Doc. 20-3, ¶ 4.13.

8.  Finally, and alternatively, Frank is individually and solidarily liable as a contractual indemnitor or guarantor of Miller Properties and Waffle House for obligations arising under the FLSA.[59]

In their Reply, Plaintiffs again reference several of the proposed allegations numbered 1-8 above in support of their joint employer theory.[60]  They specifically argue that Frank's personal liability as an FLSA employer was not eliminated just because he transferred management of Miller Properties to his son in 2012, for the following three reasons.[61]  First, the complained-of violations allegedly resulted from wage policies Frank implemented as franchise principal (*i.e.*, number 3 above); second, because the wage shortages during the Relevant Period were the result of the Accounting Services Agreement Frank allegedly executed in his individual capacity, which authorized Waffle House to take the meal credit and tip credit deductions (*i.e.*, numbers 6-7 above); and third, because Frank was engaged in a single business enterprise with Miller Properties and Waffle House, (which argument is addressed below).[62]  Thus, Plaintiffs essentially argue that, despite Frank's sale of his interest in Miller Properties before the Relevant Period, his past conduct resulted in improper wage policies and practices that remained in effect during the Relevant Period and to the present day.  Plaintiffs further argue that these facts must be assumed true, and are sufficient to state a claim for relief that is "at least plausible."[63]  Finally, Plaintiffs argue that it is reasonable to assume from Plaintiffs' allegations that discovery "may reveal evidence" to further support Plaintiffs' claim that Frank is personally liable as an employer or as part of a single business enterprise.[64]

---

[59] R. Doc. 20-3, ¶ 4.15.
[60] R. Doc. 31, pp. 2-3.
[61] R. Doc. 31, p. 4.
[62] R. Doc. 31, pp. 3-4.
[63] R. Doc. 31, p. 5.
[64] R. Doc. 31, p. 5.

*FMP's Opposition*

In opposition, FMP argues that Plaintiffs' Motion for Leave should be denied because Plaintiffs' claims against Frank are futile as a matter of law.[65] This is because, according to FMP, the claims would not survive a Rule 12(b)(6) motion dismiss under controlling case law.[66] Specifically, FMP contends that an employee who brings an action under the FLSA must demonstrate that an employer-employee relationship existed during the minimum wage periods claimed, *citing Johnson v. Heckmann Water Resources (CVR), Inc.*[67] According to FMP, the longest-possible FLSA statute of limitations applicable to this case is three years.[68] Since Plaintiffs filed the instant suit on May 10, 2017, they can only seek to recover unpaid wages going back to May 10, 2014.[69] FMP argues that Plaintiffs have failed to come forward with allegations showing that Frank was Plaintiffs' employer during that specific time period. Rather, according to FMP, Plaintiffs admit that Frank transferred his interest in Miller Properties to his son, Bo, effective August 31, 2012, which was well before the Relevant Period. Further, all of Plaintiffs' allegations regarding Frank's role with respect to Miller Properties predate May 10, 2014.[70]

FMP contends that Plaintiffs have not set forth any factual allegations to show how Frank acted as their FLSA employer after August 2012 and during the Relevant Period. Specifically, FMP contends that Plaintiffs have not shown that Frank possessed the power to hire and fire employees, supervised or controlled their work schedules or conditions of employment,

---

[65] R. Doc. 28, p. 2. FMP does not argue that the court should consider any of the four other factors, *i.e.*, (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, and (4) undue prejudice to the opposing party. *See Smith*, 393 F.3d at 595.

[66] R. Doc. 28, pp. 2-3.

[67] R. Doc. 28, p. 6. *See* 758 F.3d 627, 630 (5th Cir. 2014).

[68] R. Doc. 28, p. 6, *citing* 29 U.S.C. § 255(a) and *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-134, 108 S.Ct. 1677, 100 L.Ed. 2d 115 (1988).

[69] R. Doc. 28, p. 6.

[70] R. Doc. 28, pp. 6-7. FMP sets forth specific examples in the proposed Supplemental and Amending Complaint to show that the allegations predate the Relevant Period. *Id.*, *citing* R. Doc. 24-2 (sic, 20-3), ¶ 4.4 ("**[f]rom 1989 to 2012**…."), R. Doc. 24-2 (sic, 20-3), ¶¶ 4.5-4.6 ("**[f]rom 1989 through at least August 2012**…."), and R. Doc. 24-2 (sic, 20-3) ¶ 4.9 ("**from 1989 through at least August 2012**….") (emphasis by FMP in each).

determined the rate and method of payment, maintained employment records, or took any other employment-related actions.[71]  FMP also contends that Frank's execution of the Accounting Services Agreement in June 2004, which supposedly remained in effect while Plaintiffs were employed by Miller Properties, does not equate to control by Frank over the daily operations of Miller Properties under the economic realities test.[72]  FMP also disputes Plaintiffs' contention that Frank signed the Accounting Services Agreement in his individual capacity; rather, FMP claims that the Accounting Services Agreement reflects that Frank signed it as "principal" of Miller Properties, which he ceased to be in 2012 when he transferred his interest to Bo.[73]  Thus, FMP apparently contends that the Accounting Services Agreement does not support Plaintiffs' contention that Frank bears personal liability.   FMP additionally argues that *Bo's* decision to use the same pay practices used by Frank, Waffle House, and Miller Properties from 1989 through August 2012, which practices are allegedly still in effect, does not equate to control *by Frank* over the complained-of practices allegedly violated by Miller Properties.[74]  FMP argues that Plaintiffs' proposed allegations fall short of establishing that Frank was their employer during the Relevant Period, and thus fail to state a claim against Frank for which relief can be granted.[75]

Plaintiffs' allegations do not show that Frank was their "employer" during the Relevant Period.[76]  To begin, in *Johnson v. Heckmann Water Res. (CVR), Inc.,* the Fifth Circuit held that an employee bringing an action under the FLSA must first demonstrate by a preponderance of the evidence: "(1) that there existed an employer-employee relationship during the unpaid overtime

---

[71] R. Doc. 28, p. 7.
[72] R. Doc. 28, pp. 7-8.
[73] R Doc. 28, p. 8, n. 4, *and see* R. Doc. 31-1, p. 7.
[74] R. Doc. 28, p. 8.
[75] R. Doc. 28, p. 8.
[76] The analysis would not change whether the Relevant Period begins, as alleged by Plaintiffs, on January 1, 2014, rather than on May 10, 2014.

periods claimed."[77]  *See also Newton v. City of Henderson*, ("In order to recover, the plaintiff must show that he was 'employed' by the City during the periods of time for which he claims unpaid overtime.")[78]  Although these cases involve overtime disputes, they are instructive to the instant FLSA-minimum wage dispute.  The parties agree that Frank transferred his interest in Miller Properties to his son, Bo, effective August 31, 2012, which was *prior to* the alleged Relevant Period.[79]  All of Plaintiffs' allegations involve actions taken by Frank *prior to* the Relevant Period, *e.g.*, Frank and Waffle House entered into a franchise policy agreement "on December 29, 1988"; Frank acted as franchise principal, owner, and CEO of Miller Properties "from 1989 to 2012"; Frank, Miller Properties and Waffle House acted in each other's interest in relation to the wages, working conditions and conditions of employment of employees "from 1989 through at least August 2012"; Frank, Miller Properties, and Waffle House were "not completely disassociated" with respect to the employees' terms and conditions of employment "during that period [*i.e.*, 1989-2012]"; Frank, Waffle House, and Miller Properties shared the power to direct, control, and supervise the workers and to determine their terms and conditions of employment "from 1989 through at least 2012"; and, on "June 3, 2004," Frank, Waffle House, and Miller Properties entered into the Accounting Services Agreement by which Miller Properties and Frank engaged Waffle House to handle payroll for the Miller Properties employees.[80]

Frank's actions taken before the Relevant Period fail to show that he engaged in any actions as Plaintiffs' employer during the Relevant Period and there are no specific allegations that Frank had control over the Plaintiffs' terms and conditions of employment during the Relevant Period (*e.g.*, had the power to hire and fire them, supervised their work schedules, determined their rates

---

[77] *Johnson*, 758 F.3d at 630.
[78] 47 F.3d 746, 748 (5th Cir. 1995).
[79] R. Doc. 1, ¶ 1.11, R. Doc. 20-3, ¶ 6.6, R. Doc. 31, p. 3, and R. Doc. 28, p. 2.
[80] R. Doc. 20-3, Count IV, ¶¶ 4.3-4.6, 4.9, 4.11.

of payment or maintained any employment records).  Rather, as explained above, the only alleged specific conduct by Frank appears to have ceased approximately two years prior to the Relevant Period (at the latest).[81]

Plaintiffs also allege that, "on information and belief," Frank is solidarily liable as an "indemnitor or guarantor" of Miller Properties and Waffle House.[82]  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."[83] In order to survive a motion to dismiss, a complaint must assert "enough facts to state a claim to relief that is plausible on its face."[84] Thereafter, in *Ashcroft v. Iqbal*, the Supreme Court held that a claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[85]  It is not enough that the complaint alleges a mere "possibility that a defendant has acted unlawfully."[86]  Herein, Plaintiffs have offered no factual allegations in support of Frank's role as an indemnitor or guarantor other than "information and belief," which is speculative and conclusory.  Under controlling Supreme Court precedent, such allegation fails to state an actionable claim.[87]  Finally, Plaintiffs allege that further "discovery may reveal evidence" to further support this claim; however, it appears that Plaintiffs have already had an opportunity to attempt to discover this evidence during the first phase of discovery.[88]  Plaintiffs' allegations do not indicate that Frank engaged in any of the economic reality factors during the

---

[81] R. Doc. 20-3, Count IV, ¶¶ 4.1-4.11.
[82] R. Doc. 20-3, ¶ 4.15.
[83] *Twombly*, 550 U.S. at 555.
[84] *Id.* at 570.
[85] *Iqbal*, 556 U.S. at 678.
[86] *Id.*
[87] *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.
[88] R. Doc. 20-3, ¶ 4.15.  FMP contends that it provided dates for Frank's deposition to Plaintiffs but Plaintiffs did not depose him despite having three months to do so.  R. Doc. 28, pp. 8-9, n. 6.  Plaintiffs did not respond to this argument.

Relevant Period so as to be considered Plaintiffs' employer under the FLSA.[89]  Thus, Plaintiffs' joint employer theory against Frank appears to be futile.

>    2.  Frank Was Not Part of a "Single Business Enterprise" with Miller Properties and Waffle House

Louisiana law is determinative of whether entities constitute a "single business enterprise" ("SBE").[90]  In *Brown v. ANA Insurance Group*, the Louisiana Supreme Court explained that the SBE doctrine is "a theory for imposing liability where two or more business entities act as one."[91] Generally under the doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose."[92]  In *Green v. Champion Ins. Co.,* the Louisiana Court of Appeal for the First Circuit set forth eighteen factors that may be used to determine whether a group of entities constitutes an SBE.[93]  The list is illustrative and not exhaustive, and no one factor is dispositive of the issue of SBE.[94]  If a group of entities is found to be an SBE, then the court may disregard the concept of

---

[89] *See Johnson*, 758 F.3d at 630.

[90] *See, e.g., Green v. Champion Ins. Co*., 577 So.2d 249, 257 (La. App. 1 Cir. 1991), *writ denied*, 580 So.2d 668 (La. 1991), 1991 WL 85995.

[91] 2007-2116 (La. 10/14/08); 994 So.2d 1265, 1266, n. 2 (*citing Green,* 577 So.2d 249 (other citations omitted)).

[92] *Id*.

[93] *Green,* 577 So.2d at 257-258.  Plaintiffs refer to these factors as the "Dishon" factors, referencing *Dishon v. Ponthie*, 05-659 (La. App. 3 Cir. 2005), 918 So.2d 1132, 1135, *writ denied*, 2006-0599 (La. 2006), 927 So.2d 317, 2006 WL 1308842, wherein the Third Circuit adopted them from *Green*.  R. Doc. 31, p. 4.

[94] *Green,* 577 So.2d at 258.  The factors are:  1. Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control, 2. Common directors or officers, 3. Unified administrative control of corporations whose business functions are similar or supplementary, 4. Directors and officers of one corporation act independently in the interest of that corporation, 5. Corporation financing another corporation, 6. Inadequate capitalization ("thin incorporation"), 7. Corporation causing the incorporation of another affiliated corporation, 8. Corporation paying the salaries and other expenses or losses of another corporation, 9. Corporation receiving no business other than that given to it by its affiliated corporations, 10. Corporation using the property of another corporation as its own, 11. Noncompliance with corporate formalities, 12. Common employees, 13. Services rendered by the employees of one corporation on behalf of another corporation; 14. Common offices; 15. Centralized accounting, 16. Undocumented transfers of funds between corporations, 17. Unclear allocation of profits and losses between corporations, and 18. Excessive fragmentation of a single enterprise into separate corporations.

corporate separateness to extend liability to each of the affiliated corporations to prevent fraud or to achieve equity.[95]

*Plaintiffs' Arguments*

Plaintiffs contend that Frank may be held liable because he was engaged in an SBE with Miller Properties and Waffle House.[96]  In support of this argument, Plaintiffs merely incorporate the following allegations set forth in Count VI of their proposed Supplemental and Amending Complaint:[97]

1. Frank incorporated Miller Properties with the same domicile and business address as Waffle House;[98]

2. There was commonality in business functions, unified administrative control, related financing arrangements and centralized accounting among Miller Properties, Frank, and Waffle House;[99]

3. The three jointly determined the terms and conditions of the servers' employment, including the meal credit and tip credit practices that are currently at issue;[100]

4. The three entered into an Accounting Services Agreement[101] that allocated authority to Waffle House to handle payroll functions for Miller Properties employees, including the authority for deducing the meal credits from wages and taking tip credits;[102]

5. Frank executed the foregoing Agreement in his "individual" capacity and it remained in effect during the pendency of the Plaintiffs' employment with Miller Properties;[103]

---

[95] *Id.* at 259.  *See also Lee v. Clinical Research Ctr. of Fla., L.C.*, 2004-0428 (La. App. 4 Cir. 11/17/04), 889 So.2d 317, 323, *writ denied*, 2004-3002 (La. 2/18/05), 896 So.2d 33, 2005 WL 731067, *citing Brown v. Automotive Cas. Ins. Co.*, 93-2169 (La. App. 1 Cir. 10/7/94), 644 So.2d 723, 727 (citations omitted) (explaining that "[w]hen a group of corporations integrate their resources to achieve a common business purpose and do not operate as separate entities, each affiliated corporation may be held liable for debts incurred in pursuit of the general business purpose.")
[96] R. Doc. 20-2, p. 2, R. Doc. 31, p. 3.
[97] R. Doc. 20-2, p. 2.
[98] R. Doc. 20-3, ¶ 6.1.
[99] R. Doc. 20-3, ¶ 6.1.
[100] R. Doc. 20-3, ¶ 6.2.
[101] R. Doc. 31-1.  This agreement is dated June 3, 2004.
[102] R. Doc. 20-3, ¶ 6.3.
[103] R. Doc. 20-3, ¶ 6.5

6.  Waffle House provided Frank and Miller Properties with advice regarding the availability of meal credit wage deductions, recommendations as to the appropriate meal credit amount, proposed adjustments in meal credit amounts, and notices to employees and other documents regarding the same issues.[104]

7.  When Frank transferred his interest in Miller Properties to his son Bo in August 2012, Miller Properties issued notes payable to Frank and Susan Cason Miller, and Frank, Susan Cason Miller and Bo executed a subordination agreement in favor of Waffle House.[105]  In August 2016, Miller Properties and Waffle House executed an Interim Operating Agreement[106] by which Waffle House assumed management and operation of the restaurants. By the Agreement, a portion of revenues derived from operation of the restaurants was paid to Frank after August 2016 to satisfy Miller Properties' debt to Frank, or pay Miller Properties' debt to Waffle House.[107]

8.  Finally, during the pendency of the Interim Operating Agreement, Waffle House operated the restaurants where Plaintiffs worked both for its own interests and for the individual interests of Frank; specifically, Waffle House used the labor of Miller Properties' employees, such as Plaintiffs, to repay Frank's personal debt.[108]

Plaintiffs' Reply reiterates that allegations 1-8 above establish several of the *Green* factors, (*i.e.*, centralized accounting, interrelated contracts and financing arrangements, services rendered by employees of one corporation on behalf of another, paying the salaries of another corporation's employees, and one corporation using the property of another corporation as its own), which supports a finding that Frank was engaged in an SBE with Miller Properties and Waffle House.[109]

*FMP's Opposition*

Frank argues that there is no legal authority in support of applying SBE theory to impose liability on an individual, as opposed to a business entity.[110]  Plaintiffs did not respond to this

---

[104] R. Doc. 20-3, ¶ 6.4.

[105] R. Doc. 20-3, ¶ 6.6.  The referenced "note" and "subordination agreement" are not in the record.

[106] R. Doc. 31-2.   The Interim Operating Agreement is unsigned.

[107] R. Doc. 20-3, ¶¶ 6.7-6.8.

[108] In Reply, Plaintiffs cite to paragraph 6.9 of their proposed Supplemental and Amending Complaint at R. Doc. 20-3 as asserting this proposition; however, paragraph 6.9 alleges that Waffle House operated the restaurants for Miller Properties' interests, not Frank's.  *Compare* R. Doc. 20-3, ¶ 6.9 *to* R. Doc. 31, p. 3 and p. 5.

[109] R. Doc. 31, pp. 3-5.

[110] R. Doc. 28, p. 8, n. 5.

argument. The Court notes that current jurisprudence of its sister court, the Eastern District of Louisiana, has twice held that the SBE doctrine may not be applied to an individual in order to hold him liable along with a business entity for an alleged breach of contract.[111] While these cases are not controlling, the Court finds them persuasive. It appears unlikely that the SBE theory applies to Frank because Frank is an individual, not a business entity.[112]

Even if Frank were somehow subject to the SBE theory, it still does not appear that such a claim is facially plausible. First, the following *Green* factors are simply inapplicable to Frank because he is not a corporate entity: (1) corporations with substantial identity of ownership, (2) common directors or officers, (4) directors and officers of one corporation act independently in the interest of that corporation, (11) noncompliance with corporate formalities, and (18) excessive fragmentation of a single enterprise into separate corporations.[113] Further, Plaintiffs have failed to allege any facts to support several of the other factors: (6) inadequate capitalization, (9) corporation receiving no business other than that given to it by its affiliated corporations, (16) undocumented transfers of funds between corporations, and (17) unclear allocation of profits and losses between corporations.[114] Next, five more of the remaining factors that could potentially be considered fail because Plaintiffs have alleged no facts to indicate that they occurred during the Relevant Period. Specifically, there are no specific facts alleged to indicate that Frank and Miller Properties had unified administrative control with similar functions during the Relevant Period, or that Frank paid the salaries and other expenses or losses of Miller Properties during the Relevant Period, or that Frank and Miller Properties had common employees, offices, or accounting during the Relevant

---

[111] *See Andretti Sports Mktg. Louisiana, LLC v. Nola Motorsports Host Comm., Inc.,* 147 F. Supp. 3d 537, 553 (E.D. La. Nov. 24, 2015) *and Nussli US, LLC v. Nola Motorsports Host Comm., Inc.,* No. 15-2372, 2016 WL 4063823, at *18 (E.D. La. July 29, 2016), *reconsideration denied*, No. 15-2167, 2016 WL 6520139 (E.D. La. Nov. 3, 2016).
[112] *See, e.g., Zimmerman v. Bank of Am*., No. 07-294, 2009 WL 418606, at *2, n. 2 and *4 (N.D. Miss. Feb. 19, 2009) (relying on the ruling of sister courts in rendering decision).
[113] *Green*, 577 So.2d at 257-258.
[114] *Id*.

Period.[115]  Next, while Plaintiffs claim that Waffle House caused Frank to incorporate Miller Properties, such incorporation appears to have occurred prior to the Relevant Period.[116]  Similarly, the alleged note Miller Properties issued to Frank as part of Frank's transfer to Bo also apparently took place before the Relevant Period.[117]  Finally, as to the two remaining factors, Plaintiffs have alleged some facts to indicate that Miller Properties agreed to use Waffle House restaurant revenues (presumably generated by Waffle House employee labor) to repay Miller Properties' alleged debt to Frank.[118]  However, the presence of these two factors alone is not sufficient to establish an SBE.[119]  Considering the totality of the circumstances in the light most favorable to Plaintiffs, the overwhelming lack of *Green* factors weighs against a finding of an SBE. Accordingly, Plaintiffs have not shown that Frank was part of an SBE during the Relevant Period, which renders this claim futile.[120]  For all of the foregoing reasons, the undersigned recommends that Plaintiffs' Motion for Leave be denied to the extent it seeks leave to add Frank as a defendant.

    D.  Plaintiffs' Claims Against Waffle House Appear Facially Plausible

    Plaintiffs also seek leave to amend their complaint to add franchisor Waffle House as a defendant, on the grounds that Waffle House was a joint employer with or successor employer to Miller Properties,[121] and/or that Waffle House was part of an SBE with Miller Properties and

---

[115] *Green*, 577 So.2d at 257-258, *see* (3), (8), (12), (14)–(15).

[116] *Id., see* (7) (corporation causing the incorporation of another affiliated corporation).  The Louisiana Secretary of State records reflect that Miller Properties' registration date occurred in December 1972.

[117] *Green*, 577 So.2d at 257 *see* (5) (corporation financing another corporation) and R. Doc. 20-3, ¶ 6.6 ("On or about August 31, 2012 [Frank] transferred his interest to [Miller Properties] and to [Bo].  Miller Properties issued promissory notes payable to [Frank]….")

[118] *Green*, 577 So.2d at 257 *see* (10) (corporation using the property of another corporation as its own) and (13) (services rendered by the employees of one corporation on behalf of another corporation), *and see* R. Doc. 31-2, p. 4.

[119] *See Lee v. Clinical Research Ctr. of Fla., L.C.*, 2004-0428 (La. App. 4 Cir. 11/17/04), 889 So.2d 317, 328, *writ denied*, 2004-3002 (La. 2/18/05), 896 So.2d 33 (holding that, based on a totality of the circumstances, there were not enough factors present to create a genuine issue of material fact as to whether the defendants constituted an SBE).

[120] *Green*, 577 So.2d at 257.

[121] Plaintiffs have not sought leave to amend to assert a "successor employer" theory against Frank.  *See* R. Doc. 20-3, pp. 9-10.

Frank.[122]  In support of these theories, Plaintiffs rely in their Motion for Leave and Reply on the allegations set forth in Counts IV-VI of their proposed Supplemental and Amending Complaint.[123] Notably, defendant FMP has asserted no opposition to the extent Plaintiffs seek to add Waffle House as a defendant.

Plaintiffs have stated a claim that appears facially plausible against Waffle House.  As one example, the allegations are that Waffle House has operated the restaurants at which Plaintiffs worked since approximately August 2016, and owned them since October 2016 (according to FMP), which dates fall in the alleged Relevant Period.[124]  Furthermore, it is alleged that under the Accounting Services Agreement, Waffle House was responsible for processing payroll and processing deductions from wages.[125]  Based on these allegations, it is conceivable that Plaintiffs could prove that Waffle House was an employer under the FLSA during the Relevant Period. Finally, it does not appear that Plaintiffs seek to add Waffle House in bad faith or that the addition of Waffle House would cause prejudice to any party or undue delay in this matter.[126]  For these reasons, the undersigned recommends that Plaintiffs' Motion for Leave be granted to the extent it seeks leave to add Waffle House as a defendant.

## IV.    Conclusion

In summary, Plaintiffs have not alleged sufficient facts to show that Frank W. Miller engaged in any actions that render him an "employer" under the FLSA during the Relevant Period, either as a joint employer or as part of a single business enterprise.  Therefore, these claims to relief are not plausible and appear to be futile.  In contrast, Plaintiffs appear to have made facially

---

[122] R. Doc. 20-2, p. 2.
[123] R. Doc. 20-2, p. 2, R. Doc. 31, pp. 3-5, and R. Doc. 20-3, ¶¶ 4.1-6.9.  The allegations of Count IV and VI are set forth herein.
[124] R. Doc. 20-3, ¶ 5.2, R. Doc. 31-2, and R. Doc. 28, p. 2 and n. 3.
[125] R. Doc. 31-1, pp. 1, 12.
[126] *See, e.g.*, *Smith*, 393 F.3d at 595.

plausible claims against Waffle House, which are unopposed by FMP, and which do not trigger any of the five Rule 15 factors that would prevent amendment.

## RECOMMENDATION

Accordingly, it is the **RECOMMENDATION** of the undersigned that Plaintiffs' Motion for Leave to File Amended Complaint[127] be **DENIED** to the extent it seeks to add Frank W. Miller as a defendant in this case.

It is **FURTHER RECOMMENDED** that Plaintiffs' Motion for Leave to File Amended Complaint be **GRANTED** to the extent it seeks to add Waffle House, Inc. as a defendant in this case.

It is **FURTHER RECOMMENDED** that, if this Report and Recommendation is adopted, Plaintiffs be given fourteen (14) days to file a comprehensive amended complaint that removes factual allegations related to claims against Frank W. Miller, and which will become the operative complaint in this matter.

Signed in Baton Rouge, Louisiana, on July 12, 2018.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[127] R. Doc. 20.

20